Urquhart v. Ury.

---

ALLEN URQUHART v. GEORGE URY, ADMINISTRATOR, &c.

An abandonment of a contract will not be inferred from long delay of performance by one of the parties thereto, when such delay is sufficiently accounted for; nor will his rights be treated as a stale demand, when the delay is satisfactorily explained.

Where a vendor of land, who has made an executory contract of sale of the same, enters into a subsequent contract with his vendee, founded on a sufficient consideration, and thereby covenants to his vendee to make titles to purchasers from his vendee of portions of the land so sold, the purchasers may proceed for their titles directly against the original vendor.

APPEAL from Cass. Tried below before the Hon. Wm. S. Todd.

This suit was brought on the 26th day of August, 1856, by the appellee as administrator of Jesse Nave, deceased, against the appellant, for the recovery of twenty-nine town lots in the city of Jefferson. Certain other parties, who had purchased some of the town lots from the appellant, were also made defendants.

In his original petition, the plaintiff alleged the death of Nave in 1849, and his appointment as administrator in 1852. That, on the 9th of June, 1845, the said Nave and one Berry H. Dur-

ham entered into a contract, by which Durham bargained and sold to Nave twenty-nine designated town lots in Jefferson, in consideration of which Nave agreed to convey to Durham 640 acres of land in the county of Nacogdoches. That Durham and Nave executed their title bonds, each to the other, for the conveyance of title as soon as patents for their respective lands were obtained from the State. That Durham held the town lots in controversy by purchase from Allen Urquhart, the defendant, and that on the 20th day of December, 1845, after the making of the contract between Durham and Nave, Urquhart, in whom the title to the town lots remained, entered into a written agreement with Durham for the adjustment of differences which had arisen between them with regard to the town property in Jefferson sold by Urquhart to Durham, and by this agreement contracted with Durham to make titles to such persons as had made purchases of town lots from Durham. That the original contract between Urquhart and Durham for the sale and purchase of said town property, and their subsequent agreement relative thereto, above referred to, were not within the possession or control of the petitioner, who had searched for records of the same without success. That the said Nave was a *bona fide* purchaser from Durham of the twenty-nine lots sued for. That in November, 1848, Durham departed this life, and his widow became administratrix on his estate. That petitioner, as administrator of Nave, filed his petition to the February term, 1856, of the County Court of Cass county, against Durham's administratrix for titles to said lots, and obtained the decree of the court therefor, in accordance with which the said administratrix had made conveyance to petitioner, who, at the same time, made conveyance to her of the 640 acres of land in Nacogdoches county, as stipulated in the title bond of Nave to Durham. That by reason of the deaths of Durham and Nave, and of the absence or loss of the title papers of the lots and the deeds of conveyance of the land, petitioner had been delayed in obtaining title to the former, and making conveyance of the latter.

That the defendant Urquhart did not obtain a patent for the land comprising the town lots until some time in 1851. That before he obtained his patent, suit for the land was brought against

Urquhart  v.  Ury.

him by one William Davenport, in the District Court of Cass county, which suit remained undetermined until March, 1856, when it was decided in favor of Urquhart.   That in April, 1856, petitioner, as administrator of Nave, demanded of Urquhart a deed of conveyance of the lots in controversy, according to the terms of the obligation of Urquhart to Durham ; but that Urquhart refused to make such conveyance.   That during the lifetime of Durham, he and Urquhart had caused to be placed on the records of Cass county, a map of the town of Jefferson, on which map the lots in controversy were marked and designated as the lots of said Nave ; and petitioner avers that said map was recorded at the special instance of Urquhart and Durham, to show the interest and claims of ownership of the town lots.   That, in violation of his obligation to Durham, Urquhart had sold some of said town lots in controversy to his co-defendants, Eason and Watson, and to other persons unknown to petitioner, and had put such parties in possession.   That Urquhart, and all such purchasers from him, had notice and knowledge that the said lots had been sold to Nave, and were the property of his estate.   Prayer, that all such sales be annulled and vacated, and that plaintiff have judgment against Urquhart for the lots in controversy.

The title bonds of Durham and Nave to each other, and a copy of the agreement between Urquhart and Durham of December 20th, 1845, were made exhibits to the petition.

At the fall term, 1857, the defendants excepted generally to the petition, and answered with a general denial.

At the spring term, 1858, the plaintiff amended his petition, and alleged that on the 6th day of January, 1846, the defendant Urquhart and the said Durham, by and through their agents, E. P. Rogers and W. N. Bishop, entered into an agreement to settle matters in controversy between them about the title and ownership of certain parts of said Urquhart's headright survey of land, including the town of Jefferson and the town lots in controversy, in which it was mutually agreed that the list of lots before that time sold by Durham to Nave, in case Nave should not comply with the conditions of his contract, should be equally divided between them, and in case of Nave's compliance with his contract, that

Durham should account to Urquhart in town property equal in value to the purchase money of said lots. And petitioner avers that in this contract Urquhart bound himself to make titles to Nave for the said lots, as soon as Nave should comply with the conditions of his contract with Durham. That Durham did not comply with his bond by making titles to Nave for the lots in controversy, nor did Nave in his lifetime make title to Durham for the 640 acres of land in Nacogdoches county; but that plaintiff, as his administrator, did make such title to said land about the 29th of May, 1856, and had since been entitled to demand and recover, from Urquhart, titles to the lots in controversy. That since the said 29th of May, 1856, one William H. Crow sets up claim to two of said lots by purchase from Urquhart, and has possession of the same. Prays that Crow be made a party defendant, his claim be vacated, and that plaintiff have judgment for titles and possession, as prayed for in his original petition. The contract between Urquhart and Durham by their agents, Rogers and Bishop, of January 6th, 1846, is made an exhibit to this amended petition.

At the same term, the defendants Urquhart and Crow filed their general denial of all the allegations of the plaintiff; and Urquhart filed a special answer, in which he admitted the contract between himself and Durham, of December 20th, 1845, as set out in plaintiff's petition. But he alleges that subsequently thereto, on the 6th of January, 1846, by the mutual consent of himself and Durham, the said contract was altered by them, and it was agreed that the lots sold by Durham to Nave, should be equally divided between Durham and this defendant, should Nave not comply with the conditions of his contract with Durham. But if Nave did comply with such conditions, then that Durham should account to defendant for one-half of the value of the lots in town property. That, afterwards, on the 4th day of March, 1847, Durham reported to the commissioners, who had been mutually selected by defendant and Durham to settle the said dispute between them, that Nave had refused to comply with his contract of purchase of said lots; and that, thereupon, the commissioners proceeded to divide the lots between the defendant and Durham,

which division was accepted and approved by Durham. That this defendant has not, nor does not, set up claim to any of the said lots set off by the commissioners to Durham, and now disclaims all interest therein. That defendant has had peaceable, adverse possession of the lots so set off and assigned to him for more than five years previous to the institution of this suit, using and enjoying the same, and paying taxes thereon, and claiming the same under a patent duly recorded, &c.

To this special answer of Urquhart, the plaintiff excepted generally.

At the fall term, 1858, the plaintiff again amended his petition, and alleged that on the 6th day of January, 1845, (1846 ?) the said Urquhart received from Durham certain notes amounting to about $300, as the full consideration and satisfaction of the balance of purchase money due by Durham to Urquhart for his (Durham's) interest in said Urquhart's headright survey of land, which included the town of Jefferson ; whereby, as plaintiff avers, the said Urquhart ratified and confirmed the sale of the lots to Nave by Durham, and in consideration whereof he bound himself to make titles as alleged in plaintiff's original petition.

At the fall term, 1859, Urquhart amended his answer, and alleged that Nave, in the year 1847, left the State of Texas and moved to the State of Missouri, and afterwards removed thence to the State of California, without taking any steps to execute his contract with Durham for the purchase of the lots in controversy ; and that this claim of the plaintiff, his administrator, is of long standing and stale. That Durham's estate is wholly insolvent, and unable to respond to defendant. That Durham in his lifetime, on the 4th of March, 1847, did, before the persons selected by him and this defendant to settle their respective interests in the town of Jefferson, abrogate and abandon, in writing, his agreement with Nave to sell the lots in controversy, as he, Durham, had a right to do ; and that, thereby, defendant was relieved of so much of his agreement with Durham as bound him to make title to Nave as one of those to whom Durham had made sales of lots ; of all which Durham in his lifetime, and the plaintiff as his administrator, long previous to this suit, had notice. That the commis-

sioners before mentioned had duly and legally, and by the consent of Durham, set apart to defendant thirteen of said lots, designated by their numbers, which lots defendants had long since sold to divers persons, and as to who are now the real owners of said lots, defendant is uninformed. That defendant has always been, and still is, ready to make title to the other lots named in plaintiff's petition, should the court so decree; but alleges the fact to be that the said Durham in his lifetime, after the said division between him and defendant, did sell and dispose of said lots to divers persons to this defendant unknown, of all which the plaintiff and the administratrix of Durham had notice.

A copy of the agreement between Urquhart and Durham of December, 1845, and of all the proceedings of the commissioners to settle the disputes between them, is exhibited by the defendant.

This cause came to trial at the fall term, 1859, when a jury was waived and the case was submitted to the court on the petition, answers and exhibits; it being admitted upon both sides that the facts therein alleged are true.

The court rendered judgment for the plaintiff, and decreed him title and possession of the lots claimed in his petition.

The defendant, Urquhart, moved for a new trial, because the judgment of the court was contrary to law, and to the facts of the case as presented in the pleadings. The motion was overruled, and Urquhart appealed.

*T. J. & J. H. Rogers*, and *J. T. Mills*, for appellant.

*S. F. Mosely*, for the appellee.

MOORE, J.—This case was submitted to the court below for decision, with reference to the law and facts, on the allegations set forth in the pleadings and exhibits, which were mutually admitted by the parties to be true. On these the court gave judgment for the plaintiff; and we see no reason to doubt that it did so correctly. There was no definite period of time fixed by the contract between Nave and Durham, when they should mutually comply with the stipulations of their respective bonds. This was to

be done as soon as Nave should obtain a patent for the 640 acres of land which he bound himself to convey to Durham. The patent was not issued until a short time before the commencement of the present suit. And although there was great delay in obtaining it, we cannot say, in view of the explanation given for it in the pleadings, that the contract should have been regarded by the court as abandoned, or the cause of action upon which the plaintiff relied, treated as a stale demand.

Nave, by his contract with Durham, acquired whatever title the latter had to the lots in controversy, subject only to the condition that he should comply with the bond which he had given for title to the land which he exchanged for them. Durham's bond operated as an equitable conveyance of whatever title he then had, or might afterwards acquire, to the lots. Nave, if he complied with the contract on his part, was entitled to claim a deed from Durham or his heirs, or any one holding or claiming under him, with notice of Nave's equitable title; or, if Durham only held an equitable title, it passed to and vested in Nave, and he could assert it against the party holding the legal title. It cannot be questioned that the agreement of compromise between Urquhart and Durham must be regarded as a mutual admission by the former, that Durham had the right to sell the lots which he had disposed of. At least he acquired by it a relinquishment from Durham of his claim upon all the land in dispute between them, and agreed, in consideration thereof, to hold the legal title for the benefit of those persons who had purchased from Durham; and he is surely estopped from afterwards denying that Durham had a right to sell the lots. The contract between Urquhart and Durham was supported by a valuable consideration, and the latter, it is clear, could have maintained a suit against the former to have compelled him to have executed titles to the purchasers of the lots as he had agreed to do. It is equally clear that the purchasers from Durham could proceed in equity directly against Urquhart for their titles. It is said, though, that Nave was not a party to the agreement between Urquhart and Durham, and that he cannot, therefore, complain if they subsequently annul or cancel it. It may be true that, if Urquhart had conveyed the lots purchased by

Nave back to Durham, or placed Durham in the same position with reference to them, that he was before, that Nave could not complain. But this they did not intend or attempt to do. Their supplemental agreement was not intended to revoke their original compromise in any particular, but to carry it into effect, with reference to the Nave lots, upon the hypothesis that his right to them had been forfeited or lost by his failure or delay in complying with his part of the contract between himself and Durham. This, however, was not the fact. There had not been such a delay by Nave at the time Urquhart and Durham agreed to divide the lots between them, as authorized the conclusion that Nave had either forfeited or abandoned his contract. The judgment is affirmed.

Judgment affirmed.